Filed 7/17/23  P. v. Slater CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061331 |
| v. | (Super. Ct. No. 17CF1369) |
| ROBERT IRVING SLATER, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance P. Jensen, Judge.  Affirmed.

Markham Read Zerner and John J.E. Markham II for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis, Kelley Johnson and Arlyn Escalante, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant Robert Irving Slater was a practicing worker's compensation attorney when he entered into an agreement with the owner of USA Photocopy. Under this agreement, USA Photocopy paid a third party to perform intake interviews with clients of defendant's practice, saving a significant amount of his own employees' time and therefore money. In exchange, defendant used USA Photocopy's services during all workers' compensation proceedings on those cases. The law, however, prohibits referring workers' compensation clients for renumeration. Defendant was ultimately convicted of conspiracy, submitting false and fraudulent claims against insurers, and 21 counts of insurance fraud. He was sentenced to probation for two years.

On appeal, defendant contends the evidence was insufficient to prove he had the requisite intent to refer clients for compensation in violation of the Labor Code. We find that defendant's inadequate briefing failed to meet his burden to demonstrate error, and even if he had briefed the case properly, our review demonstrates the requisite substantial evidence to support the verdicts. We therefore affirm the judgment.

I

FACTS

*Background Facts*

Defendant was admitted to practice law in California since 1975. He was a solo practitioner who had handled workers' compensation cases since at least the late 1990's.

USA Photocopy, located in Santa Ana, provided attorney services, including photocopying and sending subpoenas for records for workers' compensation cases. The company would then bill insurance carriers for its services. During the relevant time period, Edgar Gonzalez was the owner of USA Photocopy and Enrique Villagomez was the manager.

As of 2011, Peter Ayala worked as a "legal investigator performing intake services." He learned that Villagomez had work in the form of "sign-up services available," and subsequently had a meeting with Gonzalez and Villagomez at the USA Photocopy office. During the course of the conversation, it was brought up that Ayala would be working directly for one attorney – defendant. After working out a payment structure with Gonzalez and Villagomez, all three of them went to defendant's office and met with him.

Ayala's role was to meet with the potential "workers' compensation client to fill out the intake retainer . . . and also get the retainer signed for the claim." Defendant's office provided the names of the clients, who had previously contacted his law office. On average, Ayala would see two to three clients per day, with the information about the potential clients sent to him by defendants' employees. Ayala would also have the client, with his assistance, complete various forms, including the workers' compensation appeals board application for adjudication, medical release forms, and fee disclosure forms, among others. With regard to copy services, there was a form signed by clients giving USA Photocopy permission to perform copy services "and the medical release forms as well." Ayala would return the forms to defendant's office in digital form, and returned the originals in person approximately every two weeks.

Ayala was told to send an invoice for his services every two weeks to USA Photocopy, which paid him for his services. Ayala had done similar work in the past for approximately 13 attorneys, and this was the first time he would be paid by a party other than an attorney. There was no written contract between Ayala, defendant, and USA Photocopy. Ayala was paid by USA Photocopy as an independent contractor. Between September 2012 and September 2015, Ayala invoiced a total of $196,280.00 to USA Photocopy. Over the six years his relationship with USA Photocopy and defendant lasted, Ayala estimated he performed intake services for about 2,000 clients for defendant, and USA Photocopy was the only copy service used for those clients. Ayala

did not perform any service for USA Photocopy other than the services he performed for defendant.

Employees from USA Photocopy went to defendant's offices once or twice a month to obtain records. The USA Photocopy employees would "show up for the entire day and copy all these records." Someone from defendant's office would prepare a basket of files in advance of the visit, and the USA Photocopy employees would go through each "file and look for the employer, the insurance, and the medical facilities" the injured worker had visited. They would also obtain personal information about the employee such as name, date of birth, and date of injury.

The USA Photocopy personnel would then take the information back to their offices and use the data to generate subpoenas to employers, insurance companies, and each medical facility at which the worker had received treatment. As the injured worker's attorney, defendant would authorize all subpoenas that were issued. Each entity would respond to the subpoena with records or by stating they had no responsive records. USA Photocopy would separately bill the cost for each subpoena to the workers' compensation insurance carrier, regardless of whether the subpoena resulted in the production of documents.

USA Photocopy expected to work on each case Ayala brought to defendant that went forward. At one point, USA Photocopy sent an e-mail to defendant with some of Ayala's invoices attached, highlighting the names of several clients. USA Photocopy inquired as to the status of those clients, because while they knew that not every case would go forward, they did expect to generate work for each case where Ayala provided services and followed up on the status of those cases.

*Charges*

In an amended complaint, defendant was charged with conspiracy (Pen. Code, § 182, subd. (a)(1), Lab. Code, § 3215[1] (count 1)); submitting a false and fraudulent claim (Pen. Code, § 549 (count 2)); and 21 counts of insurance fraud based on concealing or failing to disclose information that affects a person's right to an insurance benefit (Pen. Code, § 550, subd. (b)(3) (counts 3-23)). The complaint also alleged that defendant had engaged in a pattern of related fraudulent conduct involving the taking of more than $100,000.00.

*Trial Testimony*

In addition to the testimony relating to the background facts summarized above, numerous other witnesses testified at trial.

James Fisher, a licensed attorney, testified for the prosecution as an expert in workers' compensation. He had 31 years of professional experience at the Department of Industrial Relations, Division of Workers' Compensation, in a number of roles. Fisher was asked about a hypothetical that mirrored the facts of this case: "[A] copy service has an arrangement with an attorney where the copy service would pay a person to perform services for the attorney by signing up workers' compensation clients for the attorney. [¶] Also, in return, the attorney would use the copy service to obtain and serve records for those same workers' compensation clients." Fisher stated these facts would be prohibited by section 3215.

The prosecutor then varied the hypothetical, asking Fisher to add the fact that "the copy service then sends bills to the insurance carrier for the copy services for the workers' compensation clients above." Fisher opined that if the insurance carrier knew of the arrangement, they could not lawfully pay the bill.

---

[1] Subsequent statutory references are to the Labor Code unless otherwise indicated.

Defendant's evidence included the testimony of his pastor and his son, who was also an attorney. Both testified that defendant was an honest person. Workers' compensation attorney Avedis Gabriel Injejikian also testified. He had 32 years of experience as an attorney and had known defendant for 22 years. Based on his personal observations and reputation, he testified that defendant was "extremely honest, extremely reliable."

Defendant also offered the testimony of John Hernandez, a workers' compensation attorney, who represented both workers and companies. He was also a mediator and arbitrator, and a retired workers' compensation judge. Hernandez first met defendant professionally between 2002 and 2005. He testified that defendant had a reputation for integrity and Hernandez held defendant in high regard. He referred his own family members to defendant and was always very impressed with his work. He also testified that defendant was "knowledgeable in the workers' compensation field and workers' compensation law."

With respect to his own practice, Hernandez testified that he used different copy companies. While he was familiar with the practice of sign-up work, such as Ayala performed, he had never heard of a situation where a copy service paid a third party to perform it.

*Verdict and Sentencing*

The jury convicted defendant on all 23 counts. The jury also found the enhancement regarding the pattern of fraudulent conduct true. The court later denied defendants' motion to vacate the verdict and for a new trial due to lack of sufficient evidence.

The court sentenced defendant to serve a total of 183 days, with 182 of those days suspended on the successful completion of two years of supervised probation. Six months of the probation term was to be served with an ankle bracelet. The court also

6

ordered defendant to pay $356,175.24 in victim restitution in addition to statutory fines and fees.

Defendant now appeals.


II

DISCUSSION

Defendant's sole contention on appeal is that he did not possess the requisite state of mind to violate section 3215, which was an element of each of the crimes of which he was convicted with the exception of count 2, submitting a false and fraudulent claim under Penal Code section 549.


*Standard of Review*

"In reviewing the sufficiency of the evidence to support a conviction, we determine '"whether from the evidence, including all reasonable inferences to be drawn therefrom, there is any substantial evidence of the existence of each element of the offense charged."' [Citations.] Under such standard, we review the facts adduced at trial in the light most favorable to the judgment, drawing all inferences in support of the judgment to determine whether there is substantial direct or circumstantial evidence the defendant committed the charged crime. [Citation.] The test is not whether the evidence proves guilt beyond a reasonable doubt, but whether substantial evidence, of credible and solid value, supports the jury's conclusions. [Citation.] [¶] In considering the sufficiency of the evidence, we cannot reweigh the evidence, as the credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the trier of fact. [Citation.] Rather, we simply consider whether any rational trier of fact could have found the essential elements of the charged offenses beyond a reasonable doubt. [Citation.] Unless it is clearly shown that 'on no hypothesis

7

whatever is there sufficient substantial evidence to support the verdict,' the conviction will not be reversed." (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.)

The standard of review is the same even when the case relies on circumstantial evidence. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1572 (*Sanghera*).)[2] We must accept logical inferences that the jury might have drawn from that evidence. (*Id.* at p. 1573.)

*Relevant Crimes*

Defendant was charged with conspiracy in count 1. (Pen. Code, § 182, subd. (a)(1).) As the jury was properly instructed, the elements of conspiracy are an agreement to commit a crime and at least one overt act in furtherance of the crime. The crime the jury was instructed with was referral of clients for compensation in violation of section 3215.

Section 3215 states: "Except as otherwise permitted by law, any person acting individually or through his or her employees or agents, who offers, delivers, receives, or accepts any rebate, refund, commission, preference, patronage, dividend, discount or other consideration, whether in the form of money or otherwise, as compensation or inducement for referring clients or patients to perform or obtain services or benefits pursuant to this division, is guilty of a crime."

The jury was instructed as follows with respect to the elements of a violation of section 3215: "1. The defendant offered, delivered, received or accepted; [¶] 2. A rebate, refund, commission, preference, patronage dividend, discount, or other consideration, whether in the form of money or otherwise; [¶] 3. As compensation or inducement; [¶] 4. For referring patients or clients to USA PHOTOCOPY;

_____

[2] Defendant's reply brief spends much of its time stating why cases that state general principles of law, such as the standard of review and how inferences are used, are not factually similar to his own case. This is entirely unhelpful and beside the point.

8

AND [¶] 5. USA PHOTOCOPY performed or obtain[ed] services or benefits in the Workers' Compensation and Insurance system." In short, the prosecution's theory was that in exchange for workers' compensation intake work performed by Ayala, which saved defendant a great deal of time and money over the years, defendant gave USA Photocopy all of the copying and subpoena business that arose from those referrals.

In count 2, defendant is charged with violating Penal Code section 549, which states, in relevant part: "[A]ny person . . . who solicits, accepts, or refers any business to or from any individual or entity with the knowledge that, or with reckless disregard for whether, the individual or entity for or from whom the solicitation or referral is made, or the individual or entity who is solicited or referred, intends to violate Section 550 of this code . . . is guilty of a crime . . . ." The jury was instructed that to prove this crime, the prosecution must prove that the defendant referred business to or from USA Photocopy, and the defendant either knew or acted with reckless disregard as to whether USA Photocopy intended to violate Penal Code section 550(b)(3).

In counts 3 through 23, defendant was charged with insurance fraud by violating Penal Code section 550, subdivision (b)(3). That subdivision states: "It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following: . . . [¶] . . . Conceal, or knowingly fail to disclose the occurrence of, an event that affects any person's initial or continued right or entitlement to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled." Here, the prosecution's theory was that Gonzalez concealed or knowingly failed to disclose USA Photocopy's financial relationship with defendant with the intent to defraud. Under section 139.32, subdivision (f), if an insurance carrier knew an attorney referred a person to a copy service and received any type of compensation for doing so, or had any financial interest in the copy service, the insurance carrier would not pay any bills for that work.

9

*Defendant Failed to Meet his Burden*

Defendant did not include a straightforward statement of facts in his opening brief. Rather, he included a "combined factual and procedural statement" (boldfacing & capitalization omitted) that consisted primarily of arguments presented at trial and why those arguments support his position. He included nothing that could possibly be interpreted as an even-handed account of the evidence presented. This violates rules 8.204(a)(2)(C) and 8.360(a) of the California Rules of Court.[3]

It also violates the principles set forth in *Sanghera*, *supra*, 139 Cal.App.4th 1567: "Perhaps the most fundamental rule of appellate law is that the judgment challenged on appeal is presumed correct, and it is the appellant's burden to affirmatively demonstrate error. [Citation.] Thus, when a criminal defendant claims on appeal that his conviction was based on insufficient evidence of one or more of the elements of the crime of which he was convicted, we *must* begin with the presumption that the evidence of those elements *was* sufficient, and the defendant bears the burden of convincing us otherwise. To meet that burden, it is not enough for the defendant to simply contend, 'without a statement or analysis of the evidence, . . . that the evidence is insufficient to support the judgment[] of conviction.' [Citation.] Rather, he must *affirmatively demonstrate* that the evidence is insufficient." (*Id.* at p. 1573.)

"How does a defendant make such a showing? Perhaps the best way to understand that point is to understand how a defendant does *not* make such a showing. He does not show the evidence is insufficient by citing only his own evidence, or by arguing about what evidence is *not* in the record, or by portraying the evidence that is in the record in the light most favorable to himself. It has long been understood in the context of civil appeals, where the burden is likewise on the appellant to demonstrate that

---

[3] Additionally, many of defendant's "factual" statements in his opening brief and nearly all such statements in his reply brief lack record references, which violates rule 8.204(a)(1)(C) of the California Rules of Court.

10

the evidence is insufficient, that '[a] recitation of only [the appellant's] own evidence or a general unsupported denial that any evidence sustains the findings is not the "demonstration" contemplated under the rule.' [Citation.] . . . There is no reason in law or logic that these same principles should not apply in an appeal in a criminal case. These principles are fundamental to the very nature of appellate review, and they must be respected by the criminal defendant who seeks review of his conviction as much as by the appellant in a civil case." (*Sanghera*, *supra*, 139 Cal.App.4th at pp. 1573-1574.)

"Thus, to prevail on a sufficiency of the evidence argument, the defendant must present his case to us consistently with the substantial evidence standard of review. That is, the defendant must set forth in his opening brief *all* of the material evidence on the disputed elements of the crime in the light most favorable to the People, and then must persuade us that evidence cannot reasonably support the jury's verdict. [Citation.] If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores." (*Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

Defendant failed these requirements rather spectacularly. His "combined factual and procedural statement" (boldfacing & capitalization omitted), which is less than five pages long, stated the charges against him and then proceeded to summarize the underlying facts in less than half a page (without record references unless he was directly quoting from the prosecutor's or defense counsel's argument – which, of course, is not evidence at all). This comes nowhere close to setting forth "*all* of the material evidence on the disputed elements of the crime in the light most favorable to the People" as required by *Sanghera*, *supra*, 139 Cal.App.4th at page 1574. Because he failed to do so, he cannot carry his burden to affirmatively demonstrate error.

11

*Substantial Evidence*

Even if defendant had adequately briefed this appeal, our own review of the record demonstrates substantial evidence to uphold the verdicts. To prove defendant guilty of conspiracy and insurance fraud, the prosecution was required to prove defendant conspired to refer clients for compensation in violation of section 3215.[4] The jury was properly instructed that the intent to violate section 3215 was an element of the crime of conspiracy.

Defendant's only argument is that the evidence did not support that he knew the referral scheme at issue in this case was a crime. Despite defendant's argument to the contrary, the prosecution was not required to present "letters, emails, nor any other correspondence" or evidence of "consciousness of guilt." Defendant's knowledge of the law and intent to violate it can be inferred from the circumstances of the case. "Because intent is rarely susceptible of direct proof, it may be inferred from all the facts and circumstances disclosed by the evidence." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1245; see *People v. Thomas* (2011) 52 Cal.4th 336, 355 ["Mental state and intent are rarely susceptible of direct proof and must therefore be proven circumstantially].)"

In *People v. Paredes* (2021) 61 Cal.App.5th 858, the office administrator of a radiology practice (Parades) entered into an oral agreement with the owner of a medical clinic through which the radiology practice would pay the clinic a referral fee for patients referred to the radiology practice for magnetic resonance imaging (MRI) scans. Parades received invoices from the clinic for patient referral fees and arranged to pay those fees. (*Id.* at p. 861.) Later, the clinic's co-owner arranged for the referral of patients from a

---

[4] Specific intent to violate section 3215 is not an element of that section, but the intent to commit a crime is an element of conspiracy. (*People v. Koenig* (2020) 58 Cal.App.5th 771, 806.) Violation of Penal Code section 550, subdivision (b)(3), requires intent to defraud pursuant to the plain language of the statute.

12

chiropractic office to the radiology practice in exchange for compensation. Insurance companies were billed for at least some of these services. (*Id.* at p. 862.)

Paredes was charged with violating section 3215 and insurance fraud under Penal Code section 550, subdivision (b)(3). (*People v. Paredes*, *supra*, 61 Cal.App.5th at p. 860.) Paredes, like defendant, argued there was insufficient evidence of his mental state to violate section 3215. (*Id.* at p. 865.) The court rejected this argument, finding that "the jury could clearly find that Paredes knew that he was offering or delivering compensation for patient referrals." (*Ibid.*) A higher degree of knowledge is required here, because conspiracy, as noted above, requires specific intent. But defendant is also a person who possessed more knowledge than Paredes, who was an office manager, not an attorney.

Defendant was admitted to practice law in 1975 and operated his own law office. The defense itself presented evidence that defendant was an experienced attorney who had been practicing workers' compensation law for at least 22 years. According to Hernandez, the retired workers' compensation judge, defendant did impressive work and was "knowledgeable in the workers' compensation field and workers' compensation law." Based on defendant's level of knowledge and experience, the jury could infer that defendant knew the laws involving what kinds of referrals were lawful and which ones were not in the context of workers' compensation law.

Defendant certainly had ample notice that this scheme might have been illegal and that he should inquire further. A defendant cannot remain willfully ignorant and then claim a lack of knowledge about the specific law he was violating as a defense to a specific intent requirement. (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 779.) ["'[T]he law recognizes honest purpose, not dishonest ignorance of the law, as a defense to a charge of committing a crime requiring "specific intent."'"] Defendant should have realized that something might be amiss with a scheme that provided him with thousands of dollars worth of free labor. He could have consulted with his malpractice carrier, an

13

ethics hotline, or even the insurance carriers he worked with on a daily basis as a workers' compensation attorney if he did not wish to research the issue himself.

Further, the very oddness of the scheme involved here – where Ayala was paid by USA Photocopy, rather than by defendant himself – a type of scheme the experienced workers' compensation attorney and retired Judge Hernandez had never heard of – suggested that something was not aboveboard. The jury was entitled to infer from the oddity of the scheme that defendant, as an experienced attorney, was aware it was illegal. The lack of a written agreement – something a reasonable jury might consider routine for a lawyer – also suggests knowledge of illegality. Taken together, and given the substantial evidence standard, the evidence was sufficient for a reasonable jury to infer that defendant was aware that the referral scheme violated the law.

## III

## DISPOSITION

The judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MOTOIKE, J.

14